United States Bankruptcy Court

Eastern District Of Washington

FILED
JUN -2 2006
T.S. McGREGOR, CLERK
U.S. BANKRUPTCY COURT
EASTERN DISTRICT OF WASHINGTON

In re: ) No. 05-10617-FLK 13
)
)
)
)
JAMES GRIBBLE, ) MEMORANDUM DECISION
) (NOT FOR PUBLICATION)
)
Debtor. )

A hearing regarding the confirmation of debtor James Gribble's chapter 13 plan, filed on October 14, 2005, and modified on May 4, 2006, came on for hearing on May 23, 2006. A number of creditors and the chapter 13 trustee had objected to the confirmation of Mr. Gribble's original chapter 13 plan, but, by the date of the confirmation hearing, Mr. Gribble had settled with all of the objecting creditors, save creditor David Hazel. At the confirmation hearing, Mr. Gribble was represented by attorney K. Denny Colvin. Mr. Hazel was represented by attorney Reed Pell.

In his objection to confirmation of Mr. Gribble's chapter 13 plan, Mr. Hazel states that Mr. Gribble's plan is not proposed in good faith, a violation of 11 U.S.C. § 1325(a)(3). The test of good faith in proposing a chapter 13 plan is made on a case-by-case basis, with the court reviewing the totality of the circumstances. Relevant circumstances include: (1) the type of debt to be discharged; (2) whether the debt would be nondischargeable under chapter 7; (3) the debtor's motivation and sincerity in seeking chapter 13 relief; (4) the debtor's accuracy in stating his debts and expenses; (5) the debtor's honesty in the bankruptcy process; and (6) whether the bankruptcy code is being unfairly manipulated. In applying the good faith test, the court should examine the intentions of the debtor and the legal effect of the confirmation of the chapter 13 plan in light of the spirit and purposes of chapter 13. The debtor has the burden of establishing good faith.

The court makes the following findings of fact:

MEMORANDUM
DECISION                    -1-

1. Mr. Gribble filed a petition for relief under chapter 13 of Title 11 on October 14, 2005.

2. On the same date, he filed the original chapter 13 plan.

3. The original chapter 13 plan proposed monthly plan payments of $100 for a term of 48 months. The plan proposed to pay $1,500 through the plan to Mr. Gribble's attorney as an administrative expense. The plan also proposed to pay three secured debts directly, outside the plan:

   (a) A monthly payment of $960 on a debt in the amount of $180,000, secured by a first lien on the debtor's home.

   (b) A monthly payment of $300 on a debt in the amount of $45,000, secured by a second lien on the debtor's home.

   (c) A monthly payment of $342 on a debt in the amount of $19,000, secured by a 2005 Honda Accord.

4. Less than one month before Mr. Gribble's bankruptcy petition was filed, a decree dissolving his marriage to Dana Cowley was entered. That decree embodied the oral ruling of the state court trial judge as expressed to the parties on May 23, 2005. In part, the dissolution decree provided that Mr. Gribble would pay a $56,101 debt, incurred as an open line of credit and secured by a junior mortgage on the family residence that was awarded to Ms. Cowley in the dissolution decree. Additionally, Mr. Gribble was ordered to pay Ms. Cowley's attorney fees in the amount of $9,600. The decree provided that Mr. Gribble would pay Ms. Cowley monthly spousal maintenance in the amount of $2,034 for 19 months. In a separate child support order, Mr. Gribble was ordered to pay child support for the parties' two children in the amount of $966 per month. Consequently, Mr. Gribble's monthly family support and maintenance obligations totaled $3,000.

5. The decree provided that Mr. Gribble's spousal maintenance obligation would

05-10617-JAR13    Doc 73    Filed 06/02/06    Entered 06/02/06 14:19:50    Pg 2 of 9

commence on June 1, 2005, and end the last week of December 2006. At that point, the decree provided that child support would be reviewed by the court. Mr. Gribble anticipated that his spousal maintenance obligation would terminate in December 2006. He reasoned that Ms. Cowley's employment history and the length of the parties' marriage would not warrant long-term spousal maintenance.

6. In his dissolution proceeding, Mr. Gribble was represented by David Hazel. In his bankruptcy schedules, he listed Mr. Hazel as an unsecured creditor.

7. Almost immediately after hearing the trial judge's oral decision, Mr. Gribble consulted bankruptcy attorney K. Denny Colvin. With Mr. Colvin's assistance, Mr. Gribble began planning for a future bankruptcy filing.

8. At the suggestion of his bankruptcy attorney, he traded in his 4-year-old Toyota Camry for a new Honda Accord. He received approximately $7,500 trade-in credit for his Toyota on a $24,890 purchase price. The Toyota had 100,000 miles on it but, otherwise, it was in sound mechanical condition.

9. Mr. Gribble uses his automobile in his occupation as a salesman for Sysco.

10. At the suggestion of his bankruptcy attorney, Mr. Gribble purchased a house on September 12, 2005, for approximately $234,000. He paid $9,000 as a down payment, which he obtained by selling Sysco stock. In order to pay $2,000 for closing costs, he borrowed the money from a close friend. He owes approximately $225,000 on the house.

11. Before purchasing the house, Mr. Gribble lived in a 2-bedroom tri-plex and paid rent in the amount of $875 per month, as opposed to his current mortgage payments of approximately $1,300 per month.

12. Mr. Gribble's bankruptcy attorney advised him to make the house and car purchases before filing bankruptcy because the two financial transactions would be more expensive and difficult after bankruptcy. Also, Mr. Gribble

MEMORANDUM
DECISION                                -3-

was advised that a rental payment of $875 per month was the equivalent of a $1,300 mortgage payment, if tax consequences were included in the calculations.

13. Ms. Cowley objected to the confirmation of Mr. Gribble's chapter 13 plan. She stated that the plan failed to provide for the payment of all of the debtor's projected disposable income during the term of the plan. She stated the plan failed to provide for the full payment of all claims entitled to priority under 11 U.S.C. § 507. Lastly, she stated the plan had not been proposed in good faith.

14. For similar reasons, her attorney, Robert Velikanje, his attorney, David Hazel, and the chapter 13 trustee objected to confirmation of Mr. Gribble's original chapter 13 plan.

15. Before the confirmation hearing, Ms. Cowley asked the state court to modify its spousal maintenance award. She informed the state court judge that Mr. Gribble was not paying, and was attempting to discharge, the $56,101 debt secured by the house awarded to her in the dissolution decree. She asked the court to clarify that this debt was intended by the court to be a support obligation. She asked the court to increase Mr. Gribble's family support and maintenance obligations from $3,000 to $3,500 per month, so that the payments would cover the debt secured by the family home. She asked that the maintenance review date be extended, so that the court could take into consideration the consequences of any bankruptcy court action. Finally, she asked that the court characterize the obligation to pay her attorney fees as a support obligation.

16. The parties did not allow the trial court to rule upon Ms. Cowley's petition for modification. Rather, they negotiated a settlement. In an amended decree of dissolution, the parties agreed that Mr. Gribble's family maintenance obligation would remain $3,000 per month, but that the maintenance obligation would no

MEMORANDUM
DECISION                                -4-

longer be reviewable in December 2006. Instead, the modified decree provided that child support and maintenance would not be modifiable until December 31, 2008, at which time the maintenance obligation would terminate.

17. After agreeing to a modification of the dissolution decree, Mr. Gribble modified his chapter 13 plan. In the modified plan, he reduced the term of the plan from 48 months to 38 months. He stated that this reduction would decrease the dividend to unsecured creditors. Actually, the modified plan does not fully fund administrative and priority claims. Mr. Gribble's plan provides that Mr. Velikanje would have a priority claim in the agreed amount of $6,000, the unpaid balance of that priority claim would survive the chapter 13 discharge, and it would be paid at the rate of $100 per month.

18. Along with his modified plan, Mr. Gribble filed an amended schedule I - current income of individual debtor. In that schedule, he stated that his monthly income was $8,235 and that, after deductions, his net monthly take-home was $6,248. He also filed an amended schedule J - current expenditures of individual debtor. In that schedule, he showed total monthly expenses of $6,148.

## ANALYSIS

The issue before this court is whether Mr. Gribble has sustained his burden under 11 U.S.C. § 1325(a)(3), that his plan be proposed in good faith. In making this analysis, the court looks at the totality of the circumstances, which includes consideration of a broad range of objective and subjective factors. The court's bottom line in making this determination is whether the debtor is attempting to frustrate his creditors, or is making an honest effort to repay creditors according to the purpose and spirit of chapter 13—rehabilitation and repayment of debt.

Before bankruptcy, Mr. Gribble purchased a new car and a new home. In his trial testimony, Mr. Gribble conceded that these transactions were part of his pre-bankruptcy

05-10617-JAR13    Doc 73    Filed 06/02/06    Entered 06/02/06 14:19:50    Pg 5 of 9

planning. He explained that he needed a new car and that it made sense to buy the car before filing bankruptcy. He further explained that a man of his income should be able to provide a nice home for his children and that it made sense to purchase the home before bankruptcy ruined his credit. The court recognizes that some pre-bankruptcy planning is permissible and sensible. And Mr. Gribble offers plausible explanations for his actions.

There is, however, another consequence resulting from Mr. Gribble's pre-bankruptcy planning that concerns the issue of good faith. In our district, Mr. Gribble qualifies as a high-income debtor. His creditors and the chapter 13 trustee would subject him to a high degree of scrutiny in order to make certain that his chapter 13 plan captured all of his disposable income. Mr. Gribble undoubtedly understood that his pre-bankruptcy purchases increased his monthly living expenses by approximately $725, a sum that could have otherwise provided a significant payment for his chapter 13 plan. The court finds that Mr. Gribble's pre-bankruptcy planning to increase his monthly living expenses was motivated, in part, by a desire to limit the amount of disposable income available for distribution to his unsecured creditors.

After bankruptcy, Mr. Gribble negotiated a settlement with Ms. Cowley and her attorney. These creditors had objected to confirmation of Mr. Gribble's original chapter 13 plan, arguing that the plan was not confirmable because it failed to treat their claims as priority claims, which must be paid in full during the term of the plan. Mr. Gribble's original chapter 13 plan provided that their debts were unsecured property settlement claims. These creditors returned to state court, informing the state court trial judge about Mr. Gribble's bankruptcy and asking the trial judge to characterize the affected debts as support and not as property settlement.

There is some reason to believe that these efforts might ultimately have proved unsuccessful. For one thing, the state court had already ordered a substantial maintenance payment for Ms. Cowley. In the court's oral ruling, the court recognized that the facts of the case—the length of the marriage and Ms. Cowley's employment history—did not necessarily

MEMORANDUM
DECISION                -6-

support a lengthy or substantial maintenance award. In part, the judge's award was based upon Mr. Gribble's apparent acquiescence to such an award. So there was some reason to question the trial court's leeway to retrospectively characterize Mr. Gribble's obligation to pay the $56,101 debt and Ms. Cowley's $9,600 attorney fee debt as additional family support. The state court judge may have done so, and there were reasons to do so, but the resolution of the issue may be characterized as uncertain.

There is a second reason to doubt the efficacy of the creditors' state court efforts. It would be for this court, not the state court, to determine whether Mr. Gribble's obligations, as embodied in the dissolution decree, are priority support obligations or property settlement obligations. In making that determination, the court would have looked at the parties' circumstances, the content of the state court's oral ruling, and the terms of the dissolution decree. The court would not have been necessarily guided by the state court's, after-the-fact, post-petition characterization of the obligations.

Mr. Gribble settled with Ms. Cowley and her attorney by agreeing that his family support and maintenance obligations would no longer be reviewable in December 2006. He agreed to the entry of a modified decree that provided that family maintenance and support would not be modifiable until December 31, 2008, at which time the maintenance obligation of $2,034 would terminate. Significantly, Mr. Gribble testified at trial that he believed that the obligation to pay monthly spousal maintenance would have terminated in December 2006. He also agreed that 80 percent of Ms. Cowley's attorney fees would be characterized as a priority debt in a modified chapter 13 plan. In exchange for these considerations, Ms. Cowley agreed to withdraw her objection to confirmation of Mr. Gribble's plan and allow the $56,101 debt to be discharged as an unsecured property settlement debt.

There are number of reasons why Mr. Gribble would have agreed to such a settlement. He was agreeing to pay $2,034 for an additional 24 months in exchange for the right to discharge a $56,101 debt. The state trial court judge might have extended the family maintenance obligation beyond December 2006, even without such an agreement. Also,

MEMORANDUM
DECISION                                -7-

after learning about Mr. Gribble's bankruptcy plans, the state trial court judge might have granted Ms. Cowley's petition for modification of the decree, characterizing the disputed debts as support. This court might have agreed with that characterization.

There is, however, another less admirable motivation for this settlement—it's impact upon Mr. Gribble's disposable income during the term of his chapter 13 plan. In his original plan, Mr. Gribble proposed a monthly plan payment of $100 for a term of 48 months. His disposable income calculation of $100 per month was based upon projected monthly living expenses that included a monthly spousal maintenance payment of $2,034. But there was uncertainty as to whether that award would extend beyond December 2006. In fact, Mr. Gribble expected that the spousal maintenance award would terminate in that month. In the normal course, the $2,034 payment should have been available as disposable income for the benefit of Mr. Gribble's unsecured creditors. Mr. Gribble solved his disposable income problem by agreeing to extend his monthly spousal maintenance award for an additional period and by decreasing the term of his plan from 48 to 38 months. By the terms of his modified dissolution decree, Mr. Gribble's monthly maintenance obligation terminates in December 2008. By the terms of his proposed modified chapter 13 plan, his plan payments end in December 2008. According to the terms of his modified plan, his disposable income will always be $100 per month, which will be insufficient to pay any dividend to unsecured creditors and insufficient even to fully fund administrative and priority claims.

The court concludes that Mr. Gribble has not sustained his burden under 11 U.S.C. § 1325(a)(3) and has not demonstrated that his plan is proposed in good faith. In making that determination, the court has looked at the totality of the circumstances and it is all of the circumstances that lead the court to this conclusion. Any one circumstance would not have been sufficient. For example, Mr. Gribble's pre-petition purchases, in and of themselves, might not have been sufficient. Rather, it is the combination of Mr. Gribble's pre-petition purchases, his post-petition dissolution settlement, his subsequent modification of his plan, and his proposal of a small payment plan over a short term that compels the court to conclude

MEMORANDUM
DECISION         -8-

that Mr. Gribble's plan is not proposed in good faith.

**DISPOSITION**

The court orders that Mr. Gribble's October 14, 2005, plan as modified on May 4, 2006, shall not be confirmed.

DATED this 2nd day of June, 2006.

*/s/ Frank L. Kurtz*
FRANK L. KURTZ, Bankruptcy Judge

MEMORANDUM
DECISION                    -9-